UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case No. 18-cr-0170 (WMW/BRT) |
| Plaintiff, | **ORDER ADOPTING REPORT AND RECOMMENDATION** |
| v. | |
| Benjamin Robert Yackel (3), | |
| Defendant. | |

This matter is before the Court on the October 19, 2018 Report and Recommendation (R&R) and the November 29, 2018 R&R of United States Magistrate Judge Becky R. Thorson. (Dkts. 98, 120.) The October 19, 2018 R&R recommends denying Defendant Benjamin Robert Yackel's motion for a *Franks* hearing and his third motion to suppress evidence obtained during the execution of two search warrants. The November 29, 2018 R&R recommends denying Yackel's first motion to suppress evidence, and granting in part and denying in part Yackel's second motion to suppress evidence. Yackel timely filed objections to both R&Rs. For the reasons addressed below, the Court overrules Yackel's objections and adopts both R&Rs. Each R&R is addressed in turn.

### I.     October 19, 2018 R&R (Dkt. 98)

Officer Cole Peterson of the Minneapolis Police Department obtained two search warrants on May 28, 2018 as part of a narcotics investigation involving Yackel. One warrant authorized the search of Yackel's house and the other warrant authorized the search of Yackel's person. Each warrant was supported by an affidavit containing nearly identical

facts.

The search warrant affidavits stated that Officer Peterson began investigating Yackel after receiving information from a "Cooperating Defendant" (CD) that Yackel was involved in the distribution of large quantities of methamphetamine from his home in Minneapolis. The CD provided Yackel's address to Officer Peterson who corroborated it using property registration and tax records.

The affidavits describe a controlled buy between the CD and Yackel that Officer Peterson arranged. The CD called Yackel, who directed the CD to come to Yackel's house at the address that the CD previously provided to Officer Peterson. Officer Peterson searched the CD before the drug transaction, verified that the CD did not possess any contraband, and provided the CD a pre-recorded quantity of "buy money." During the controlled-buy transaction, Officer Peterson and assisting investigators surveilled the area. After the drug purchase, the CD gave Officer Peterson "a quantity of methamphetamine which [the CD] indicated was purchased from [Yackel]."

The affidavits summarize Yackel's criminal history and state that a Hennepin County Sheriff's Office investigator informed Officer Peterson that, within the prior 30 days, officers executed a search warrant at Yackel's house and recovered at least one firearm. According to the affidavits, the investigator also represented that federal charges against Yackel were being brought based on evidence recovered during the execution of that search warrant.

*Analysis*

Yackel moves to suppress evidence recovered during the execution of the two

2

search warrants obtained by Officer Peterson. Yackel also seeks an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). Alternatively, Yackel argues that the evidence should be suppressed because the search warrants were issued without probable cause. The October 19, 2018 R&R recommends denying both Yackel's request for a *Franks* hearing and his motion to suppress evidence seized pursuant to the search warrants for lack of probable cause. Yackel objects to both recommendations of the R&R. The Court reviews each objection de novo. 28 U.S.C. § 636(b)(1); *accord* LR 72.2(b)(3).

    A.    *Franks* Hearing

Yackel contends that a *Franks* hearing is warranted because the affidavits contain false and misleading statements, and he argues that the search warrants were not supported by probable cause. Yackel first challenges the sufficiency of the affidavit's description of the controlled buy and Officer Peterson's interactions with the CD. He next argues that the affidavits include false and misleading statements about a firearm recovered during the earlier execution of a different search warrant and related federal charges.

A defendant may challenge the validity of a search conducted pursuant to a warrant by challenging the veracity of the affidavit offered in support of probable cause. *Franks v. Delaware*, 438 U.S. at 171; *see also United States v. Sundby*, 186 F.3d 873, 876 (8th Cir. 1999). A *Franks* hearing is warranted when a defendant makes a "substantial preliminary showing" that (1) a search warrant affidavit includes a false statement that the affiant made "knowingly and intentionally, or with reckless disregard" for whether the statement was true, and (2) the false statement is "necessary to the finding of probable cause." *Franks*, 438 U.S. at 155-56. Similarly, a defendant is entitled to a *Franks* hearing if he makes a

substantial preliminary showing that information has been *omitted* from a search warrant affidavit either to intentionally mislead or with reckless disregard for whether the omitted facts would result in a misleading affidavit. *See United States v. Jacobs*, 986 F.2d 1231, 1234 (8th Cir. 1993). To make a substantial preliminary showing, a defendant must offer "specific allegations along with supporting affidavits or similarly reliable statements." *United States v. Gonzalez*, 781 F.3d 422, 430 (8th Cir. 2015).

Yackel argues that a *Franks* hearing is necessary to produce evidence that the controlled buy actually occurred, a fact which Yackel denies, and to demonstrate that Yackel has not faced charges related to any firearm recovered during a prior search. But Yackel offers no evidence and advances no argument that undermines the R&R's conclusion that Yackel failed to make the requisite "substantial showing" that would entitle him to a *Franks* hearing. Instead, Yackel merely "complains" in his objection to the R&R "that the standard the Court applies to the threshold *Franks* question is impossible to meet."

A bare allegation, without an offer of proof, fails to meet the requisite preliminary showing for a *Franks* hearing. *United States v. El-Alamin*, 574 F.3d 915, 925 (8th Cir. 2009). Yackel's unsupported assertion that the controlled buy did not occur does not entitle him to a *Franks* hearing. As the R&R observes, the detailed search warrant affidavit contradicts Yackel's allegation. The affidavit specified Yackel's address, which was corroborated by Officer Peterson, and describes how the controlled buy was arranged and surveilled by law enforcement.

Yackel provides no argument challenging the R&R's conclusion that the statements in the affidavit referring to a firearm and related federal charges are not false or misleading,

4

nor made with reckless disregard for the truth. And the record does not show, nor has Yackel argued, that Officer Peterson falsely stated in the affidavits that an investigator informed him about a previous search warrant, evidence recovered, and possible related federal charges.

Because Yackel fails to make a "substantial preliminary showing" that the affidavits included intentional or reckless falsehoods, or that the affidavits omitted facts either to intentionally mislead or with reckless disregard for whether the omitted facts would result in a misleading affidavit, Yackel is not entitled to a *Franks* hearing.

      B.      <u>Probable Cause</u>

Having concluded that Yackel is not entitled to a *Franks* hearing, the Court next reviews whether the search warrant affidavits establish probable cause to search Yackel and his home.

The Fourth Amendment to the United States Constitution requires search warrants to be supported by probable cause. U.S. Const. amend. IV; *United States v. Gabrio*, 295 F.3d 880, 882 (8th Cir. 2002). To determine whether probable cause exists, a detached and neutral judge must make a "practical, common-sense decision" whether there is a fair probability that contraband or evidence of a crime will be found in the place to be searched. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The test for probable cause cannot be reduced to "precise definition or quantification." *Florida v. Harris*, 568 U.S. 237, 243 (2013) (internal quotation marks omitted). When a judge issuing the search warrant relies solely on a search warrant affidavit, only the information "within the four corners of the affidavit may be considered in determining the existence of probable cause." *United States v.*

*Solomon*, 432 F.3d 824, 827 (8th Cir. 2005) (internal quotation marks omitted). A court reviewing the issuing judge's probable cause determination owes that determination substantial deference. *United States v. LaMorie*, 100 F.3d 547, 552 (8th Cir. 1996).

The R&R concludes that the affidavits support a determination of probable cause. Officer Peterson referred to the details of the controlled buy that he conducted using the CD and to the execution of a search warrant on an earlier occasion during which "at least one firearm" was recovered. This detailed information establishes probable cause to believe that evidence of drug trafficking as described in the search warrant affidavit would be found at Yackel's residence.

Yackel argues in a conclusory fashion that the search warrant affidavits are "weak" and that the affidavits neither include enough detail about the CD, nor adequately connect Yackel to the location of the controlled buy. Having reviewed the affidavits with the substantial deference owed to the issuing judge, the Court concludes that the search warrant affidavits are sufficiently detailed and comprehensive to support a determination of probable cause.

For the foregoing reasons, the Court overrules Yackel's objections to the October 19, 2018 R&R, and denies Yackel's request for a *Franks* hearing and his third motion to suppress.

**II.     November 29, 2018 R&R (Dkt. 120)**

    A.     <u>Yackel's first motion to suppress evidence related to a December 19, 2017 traffic stop</u>

On December 18, 2017, Deputy Robert Hillesheim of the Redwood County

Sheriff's Office received a call from a confidential reliable informant (CRI) who explained that he had been in contact with D.K. who agreed to sell a quantity of methamphetamine for $19,000 to the CRI. Deputy Hillesheim recorded a call between the CRI and D.K. during which D.K. agreed to drive to Brown County in a black Ford Expedition to deliver the methamphetamine. Deputy Hillesheim conducted a background check after the call and learned that D.K. drove a black Ford Expedition registered to his father.

Later that evening, D.K. told the CRI that he was not planning to drive to Brown County because a co-conspirator had been arrested. Deputy Hillesheim used a Department of Public Safety State Patrol Report to confirm that the person D.K. identified as his co-conspirator had been arrested. But at 4:00 a.m. the next day, the CRI called another member of Deputy Hillesheim's task force and advised that D.K. and two other people had arrived in a Ford Expedition at the farm where the CRI lives. The CRI told Deputy Hillesheim that the two people—later identified as Yackel and co-defendant Kendra Johnson—had a small bag with about one ounce of methamphetamine. In addition, based on the CRI's conversations with D.K., Yackel, and Johnson, the CRI believed that Yackel and Johnson had two additional pounds of methamphetamine with them.

Deputy Hillesheim set up surveillance with marked patrol cars located around the farm, and he and directed the CRI to find a reason to leave. The CRI told D.K., Yackel, and Johnson that he did not have enough money with him to purchase the methamphetamine and directed them to meet him in the City of Evan to complete the transaction. Officers in Deputy Hillesheim's surveillance team observed the Ford Expedition traveling southbound toward the City of Evan. Deputy Hillesheim directed a

marked patrol car to stop the Expedition. Yackel was the driver. Johnson and D.K. were passengers.

Deputy Hillesheim and members of his team searched Yackel, Johnson, and D.K. for weapons, and seized physical evidence recovered during the searches. Members of Deputy Hillesheim's team sealed the Expedition and had it towed. Deputy Hillesheim later obtained a search warrant for the Expedition.

*Analysis*

Yackel objects to the R&R's conclusion that the stop of the Expedition was supported by probable cause. The Court reviews Yackel's objection de novo. 28 U.S.C. § 636(b)(1); *accord* LR 72.2(b)(3).

"[P]robable cause means 'a fair probability that contraband or evidence of a crime will be found.'" *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Gates*, 462 U.S. at 238). Probable cause to believe an offense has been or is being committed may be established with information provided by an informant who has provided reliable information in the past, or when officers can independently corroborate important details from the informant's tip. *See United States v. Edwards*, 891 F.3d 708, 711 (8th Cir. 2018); *United States v. Hambrick*, 630 F.3d 742, 747 (8th Cir. 2011).

The R&R concludes that Deputy Hillesheim properly relied on information from a CRI who had provided reliable information in the past and whose information was independently corroborated. The record and relevant caselaw support the R&R's conclusion.

Yackel does not challenge the R&R's conclusion that there was probable cause

8

based on information provided by the CRI. Nor does Yackel explain the legal significance of any differences between Deputy Hillesheim's testimony during the evidentiary hearing about probable cause for the stop and sworn statements included in Deputy Hillesheim's warrant application to search the Expedition after the stop. Deputy Hillesheim's testimony during the evidentiary hearing was more expansive than the information included in the search warrant affidavit. Although Yackel identifies purported differences between Deputy Hillesheim's testimony and his declaration in the search warrant affidavit, none of the differences that Yackel highlights in his objections is contradictory or undermines the R&R's conclusion that Deputy Hillesheim had probable cause to stop the Expedition based on the information provided by the CRI. For these reasons, the Court overrules Yackel's objections related to the December 19, 2017 traffic stop. Yackel's first motion to suppress is denied.

        B.      <u>Yackel's second motion to suppress evidence related to a December 27, 2017 traffic stop</u>

Officer Mark Marah of the Brooklyn Park Police Department was on patrol in Brooklyn Park during the early morning hours of December 27, 2017 when he responded to a 911 call reporting suspicious activity at an apartment complex. At the apartment complex, Officer Marah observed a U-Haul in the parking lot and a black SUV leaving the lot. Officer Marah stopped the U-Haul and another officer stopped the black SUV. The drivers of the vehicles reported that they were helping a resident of the apartment complex move out. The U-Haul driver told Officer Marah that Kiersten Olson, Yackel's co-defendant in this case, would be arriving at the apartment complex soon. Officer Marah,

9

who was familiar with Olson, knew that she was involved in criminal activity related to stolen vehicles and drug possession. Officer Marah also knew that there were multiple warrants for Olson's arrest. As Officer Marah surveilled the apartment complex, he observed a white Pontiac Grand Prix and a Dodge pickup truck arrive. Officer Marah observed individuals move between the apartment building and the two vehicles over the next few hours. During this period, he observed a woman matching Olson's description.

After the pickup truck and the Grand Prix left the parking lot, each vehicle failed to signal its turn 100 feet prior to an intersection. When Officer Marah observed the Grand Prix drive over the right-hand fog line, he initiated a traffic stop. Yackel was driving, and Olson was his front-seat passenger. Yackel appeared to be very nervous.

Officer Marah directed Yackel to step out of the car and conducted a pat-down search. Because he had located stolen firearms during previous stops conducted on motorists leaving the apartment complex, Officer Marah was concerned about weapons and officer safety. During the pat-down search of Yackel, Officer Marah felt a large bulge that did not feel like a weapon in Yackel's front, left breast pocket. Officer Marah asked about the bulge. When Yackel responded that it was money, Officer Marah removed the cash from Yackel's pocket.

As he continued the frisk, Officer Marah felt a small bulge in Yackel's right-side pants pocket and saw the corner of a plastic bag protruding. Officer Marah determined that the bulge was not a weapon. But based on the location and the packaging, he suspected that the bulge was narcotics. In response to Officer Marah's question, Yackel confirmed that his pocket contained narcotics. Officer Marah removed the plastic bag. Later, law

enforcement determined the contents to be nine ecstasy pills.

Continuing the frisk, Officer Marah felt a hard, brick-sized bulge on Yackel's inner right thigh. Officer Marah feared that the bulge was either a weapon or a case holding a weapon. In response to Officer Marah's question, Yackel stated that the bulge was approximately $30,000 in cash that was strapped to his leg. Officer Marah remained concerned that the bulge was either a weapon or a case holding a weapon. After arresting Yackel, Officer Marah directed Yackel to remove the item from his leg, and Officer Marah confirmed that the object was a bundle of cash. Officer Marah seized the money and the ecstasy pills recovered during the search. A search of Olson's purse and a bag located in the front passenger area of the Grand Prix produced more than one pound of methamphetamine.

*Analysis*

Yackel objects to the R&R's conclusion that the stop of the Grand Prix was lawful. The Court reviews Yackel's objection de novo. 28 U.S.C. § 636(b)(1); *accord* LR 72.2(b)(3).[1]

The R&R concludes that the stop was lawful because Officer Marah observed the

---

[1] With respect to the November 29, 2018 R&R's analysis of the December 27, 2017 traffic stop (Part II), Yackel objects only to the R&R's conclusion that the stop of the Grand Prix was lawful. The Court reviews for clear error the portions of the R&R to which Yackel does not object. *See* Fed. R. Civ. P. 72(b) advisory committee's note to 1983 amendment ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."); *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (per curiam). Having reviewed those portions of the R&R, the Court finds no clear error.

driver of the Grand Prix commit two traffic violations (failing to signal a turn at least 100 feet before an intersection and driving over the fog line) before pulling over the Grand Prix. Yackel argues that, contrary to the R&R's finding, Officer Marah's testimony about the traffic violations that he observed is not credible. Yackel contends that Officer Marah was "unable to see" whether the Grand Prix signaled properly before making the turn, and that Officer Marah's testimony that the Grand Prix drove over the fog line "doesn't make sense." But Yackel does not cite any part of the record to support this argument, and upon review of the evidentiary hearing transcript, the Court finds Officer Marah's testimony both clear and credible. *See Taylor v. Farrier*, 910 F.2d 518, 521 (8th Cir. 1990) (stating that, upon a party's proper objection, a district court is required to conduct a de novo review of an R&R's findings, including credibility determinations). During cross-examination, Officer Marah testified that he could see the Grand Prix's signal light when the driver failed to signal, and he observed the Grand Prix travel over the fog line before he pulled the car over. This Court's de novo review of the record establishes no basis to disagree with the R&R's conclusion that Officer Marah's testimony about the traffic violations is credible.

In addition to challenging the R&R's credibility determination, Yackel argues, as he did before the magistrate judge, that the traffic violations were a pretext to stop the Grand Prix. Officer Marah's true reason for stopping the vehicle was Kiersten Olson's presence in it. An officer has probable cause to conduct a traffic stop if the officer has an objectively reasonable basis to believe that the driver has violated traffic regulations. *United States v. Thomas*, 93 F.3d 479, 485 (8th Cir. 1996). An officer's subjective motivations for effectuating a traffic stop are irrelevant to a Fourth Amendment analysis

12

when the officer has an objectively reasonable basis for a traffic stop. *See Whren v. United States*, 517 U.S. 806, 813 (1996). Traffic violations are an objectively reasonable basis to effectuate a traffic stop. *Id.* For all the reasons addressed above, Yackel's objections arising from the December 27, 2017 traffic stop are overruled. Yackel's second motion to suppress evidence is granted in part and denied in part as addressed in Part II of the November 29, 2018 R&R.

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1. Defendant Benjamin Robert Yackel's objections to the October 19, 2018 R&R, (Dkt. 118), and the November 29, 2018 R&R, (Dkt. 127), are **OVERRULED**.

2. The October 19, 2018 R&R, (Dkt. 98), and the November 29, 2018 R&R, (Dkt. 120), are **ADOPTED**.

3. Defendant Benjamin Robert Yackel's first motion to suppress evidence, (Dkt. 75), third motion to suppress evidence and request for a *Franks* hearing, (Dkt. 77), are **DENIED**.

4. Defendant Benjamin Robert Yackel's second motion to suppress evidence, (Dkt. 76), is **GRANTED** in part and **DENIED** in part as addressed in Part II of the November 29, 2018 R&R.

Dated: January 28, 2019                    s/Wilhelmina M. Wright
                                           Wilhelmina M. Wright
                                           United States District Judge